1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JOSE ANTONIO VEGA, JR.,                    No.  2:18-cv-1030 KJM AC

12                    Petitioner,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14    JOE LIZARRAGA,

15                    Respondent.

16

17         Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  The petition, ECF No. 1, challenges petitioner's

19    2012 conviction for first degree murder and related offenses.  Respondent has answered, ECF No.

20    12, and petitioner has filed a traverse, ECF No. 16.

21                                    BACKGROUND

22    I.       Proceedings in the Trial Court

23         A.  Preliminary Proceedings

24         Petitioner was charged in San Joaquin County with a gang related murder.  At a first trial,

25    the jury was unable to reach a verdict on any count.  The case was retried.

26    ////

27    ////

28    ////

1

1        B.  <u>The Evidence Presented at the Second Trial</u>[1]

2             1.  <u>Prosecution Case</u>

3        The two teenaged victims spent July 26, 2010, barbequing, drinking, and taking controlled

4   substances throughout the afternoon and evening.  In the early evening, they heard a group of

5   people in front of an apartment complex down the block shouting and making hand signals in

6   promotion of a particular gang.  The surviving victim later recalled that one of the group was

7   wearing a blue-and-white plaid shirt.  From what he could see of their faces at this distance, he

8   did not recognize anyone.  Although he did not participate in gang activities, the surviving victim

9   was aware of the hand signal associated with a rival of this gang, and "stupid[ly]" made the

10  gesture and shouted the name of the rival gang in the direction of the group.  This was the extent

11  of the interaction at that time.

12       In the small hours of the following morning, the victims decided to walk to a nearby

13  convenience store after returning from a friend's home in order to get a cigar to use as a

14  marijuana smoking device.  As they approached the store, a man came out from between two

15  buildings and abruptly began to shoot at them without any provocation.  The surviving victim, 18-

16  year-old Jeffrey A., noticed the man was wearing a blue and white plaid shirt, but could not

17  remember anything about the shooter's face.  He ran to the convenience store for help; his friend,

18  19-year-old Derrick Gann, fell in the street, gravely wounded.  The police arrived shortly after

19  4:00 a.m.  A bullet had severed two major arteries in Gann's abdomen, causing massive bleeding.

20  Almost half of his blood supply poured into his abdominal cavity, his heart stopped, and he died

21  within an hour.  Jeffrey A. was hospitalized for a week with an abdominal bullet wound.

22       A resident living close to the convenience store had been outside helping a friend change

23  the oil in his car.  He heard shots from the direction of the store.  Suddenly a man (whom he

24  identified at trial as petitioner) ran into the yard of the neighboring apartment complex and tried

25  to push through the fence into the yard of the resident's apartment complex.  The resident told

26  him to stay out.  Petitioner was wearing the blue-and-white plaid shirt that was an exhibit at trial.

27  _____

[1]  This summary is adapted from the opinion of the California Court of Appeal, Lodged Doc. 23
28  (ECF No. 13-23) at 2-6.

He claimed someone was shooting at him.  The resident could hear approaching police sirens.
Petitioner eventually entered the neighboring apartment complex.

A unit in this apartment complex was a "flophouse," open to anyone who would share
controlled substances with the tenants.  Everyone in the apartment was busy packing in
anticipation of an eviction later that day.  There were a number of people present.  One of the
people who had been staying with the tenants was outside smoking marijuana when he heard the
gunfire.  He saw a man in a blue-and-white plaid shirt run toward the rear of the apartment
complex from the vicinity of the shots, but lost sight of him.  The man (whom the witness
identified as petitioner) ultimately came into the apartment where everyone was gathered, and
introduced himself as "Spanky" from Salinas.  He told them that he had shot someone and needed
to run.  Petitioner took a shirt from the witness and offered him the blue-and-white plaid shirt in
exchange.  In the process, the witness thought he saw a gun on petitioner's person.  The witness
later gave the shirt to a detective.

Before he died, Gann spoke with his grandmother about the shooting.  The conversation
occurred shortly after surgery, and Gann was still groggy.  She told detectives that he said there
had been two unknown attackers; she did not mention anything about the clothing.  At trial, she
was not sure whether or not her grandson had in fact described the color of the shirt one of the
men was wearing.

On July 29, a detective went to the hospital and showed Jeffrey A. a single photograph,
which was petitioner's driver's license picture.  Jeffrey A. did not know the identity of the person,
but apparently said he had been among the group of people down the block making gang
references.  Jeffrey A. did not initially identify the person as also being the shooter.  However,
toward the end of the interview Jeffrey A. apparently said that the person was also the shooter.  In
an August 1 interview, Jeffrey A. mentioned only that defendant had been part of the group down
the block.  The detective brought a photo array to Jeffrey A. on August 3 that apparently included
petitioner's picture.  Jeffrey A. did not identify anyone, and said he did not know if he would be
able to identify anyone from the earlier confrontation or the shooting.  However, when shown the
shirt that the witness had given to detectives, Jeffrey A. remembered the shooter wearing it.  At

1   this point in time, Jeffrey A. was uncertain whether anyone in the group down the block had been
2   wearing it.
3       DNA retrieved from the shirt was consistent with petitioner's.  Gunshot residue on the
4   shirt indicated it had been within two to 15 feet of a discharged firearm.
5       On his arrest, petitioner confirmed being a member of a subset of the umbrella gang that
6   the group down the block had been venerating, but he lived in Ripon.  His daughter lived in
7   Manteca with her mother, and he had been staying in various places near them.  He denied having
8   any knowledge of any shootings or being at the scene.  He said he had spent July 26 drinking and
9   smoking marijuana with various vaguely described individuals at various vaguely described
10  locations, winding up at a construction site in the small hours of Tuesday morning, where he
11  waited for his child's mother (now his wife) to pick him up.  Petitioner acknowledged wearing the
12  blue-and-white shirt earlier on Monday, but it was gone when he woke up after passing out in a
13  park.  He claimed the people from the flophouse who had identified him were setting him up.

14          2.  Defense Case

15      Petitioner testified in his own defense.  He had been a member of a subset of the gang
16  since his youth in Salinas and Hayward.  He has an abundance of gang-referencing tattoos.  He
17  was not part of the group of gang devotees with whom the victims had interacted earlier in the
18  evening; he had left Manteca about 6:00 p.m. and received a call from his now wife around 7:30
19  p.m. while he was in Ripon.  He returned to Manteca in the company of a friend about 9:00 p.m.
20  He was wearing the shirt Jeffrey A. had described.

21      Petitioner eventually parted ways with his companions.  It was too late to call his wife, so
22  he decided to go to a different apartment in the flophouse building to meet with his supplier and
23  buy methamphetamine; he did not know anyone else in the building.  The supplier told petitioner
24  to go wait on the corner near the convenience store for one of the supplier's sellers (whom the
25  supplier had pointed out to petitioner in the past).  Petitioner decided to wait in an alley between
26  buildings rather than out in the open.  The seller arrived, and handed petitioner the drugs.  Just
27  then, the victims walked past the alley.  As petitioner stood close by, the seller abruptly turned
28  and started firing at the victims.  The seller moved toward the victims.  Petitioner ran off in the

4

1  other direction and heard additional shots fired as he headed to the flophouse building.  He

2  thought the seller might be shooting at him for running off without paying.

3      Petitioner tried to jump over the fence, at which point he had the exchange to which the

4  oil-changing neighbor had testified.  The flophouse occupants then invited him into their

5  apartment.  He abandoned his shirt to avoid detection; he was wearing another underneath.  He

6  did not have a gun with him, and did not have one at home.  The witness had observed his metal

7  marijuana pipe.  Eventually, he left the apartment and went to the home of a friend in order to call

8  his wife, who came to pick him up and take him back to Ripon.

9      He had not told the truth in the police interview because he feared retaliation from other

10  gang members.  In point of fact, after previously testifying about the drug seller (in his first trial),

11  gang members beat him up in jail.

12      C.  Outcome

13      The jury found petitioner guilty of first degree murder and premeditated attempted murder

14  (finding he committed both while personally firing a gun in gang-related activity), being a felon

15  in possession of a gun, and engaging in gang related activity.  The trial court sentenced him to

16  state prison for a determinate term on the two nonhomicide offenses, with consecutive

17  indeterminate sentences for the murder and attempted murder (and their firearm enhancements) of

18  82 years to life.  It stayed the two enhancements for gang-related activity because the underlying

19  offenses carried longer minimum sentences.

20      II.  Post-Conviction Proceedings

21      Petitioner timely appealed.  On April 23, 2015, the California Court of Appeal reversed

22  the conviction for the gang offense, ordered the judgment modified to strike the determinate

23  sentence on that count, and otherwise affirmed.  Lodged Doc. 20 (ECF No. 13-20).  The

24  California Supreme Court granted review, ECF No. 25, and the Court of Appeal vacated its

25  opinion, ECF No. 26.

26      On November 16, 2016, the Court of Appeal issued a decision on remand that reversed the

27  conviction for the gang offense, ordered the judgment modified to strike the determinate sentence

28  on that count, further modified the judgment to strike the two gang enhancements, and otherwise

5

affirmed.  Lodged Doc. 23 (ECF No. 13-23).  On February 1, 2017, the California Supreme Court

denied review of the decision on remand.  Lodged Doc. 28 (ECF No. 13-28).

Petitioner did not file any applications for state habeas relief.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits,

whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

(2011).  State court rejection of a federal claim will be presumed to have been on the merits

absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

may be overcome when there is reason to think some other explanation for the state court's

decision is more likely."  Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

(2013).

////

6

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08.  It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court.  Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

DISCUSSION

I.    Claim One: Confrontation Clause

A.  Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that the jury improperly considered hearsay admitted through the gang expert's testimony, in violation of his right to confront witnesses.  He specifically challenges testimony by the gang expert regarding the predicate offenses and their underlying facts, as well as an allusion to the murder of an inmate who had tried to reconcile two rival prison gangs; information about the subset to which defendant belonged; and details of defendant's gang-related activity (fighting in public with a knife, being a passenger in a car with a shotgun in the ////

7

1   trunk, stealing car stereos, firing gun at rival, possession of methamphetamine, driving a stolen

2   car, and participation in a gang fight).  ECF No. 1 at 24-27.

3           B.  The Clearly Established Federal Law

4        The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

5   enjoy the right to . . . be confronted with the witnesses against him."  The Confrontation Clause

6   prohibits the admission of testimonial out-of-court statements by non-testifying individuals.

7   Crawford v. Washington, 541 U.S. 36 (2004).  Not all hearsay implicates the core concerns of the

8   Confrontation Clause; the dispositive question is whether the statement is "testimonial."

9   Crawford, 541 U.S. at 51.  A statement is testimonial only when its primary purpose is the

10  development of evidence to support a prosecution.  Davis v. Washington, 547 U.S. 813, 822

11  (2006); Michigan v. Bryant, 562 U.S. 344, 359 (2011).

12          C.  The State Court's Ruling

13       This claim was raised on direct appeal.  Because the California Supreme Court denied

14  discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

15  decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

16  501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

17       The Court of Appeal ruled in pertinent part as follows:

18           Defendant maintains that while the gang expert "did not always
19          specify the source of his information, the only reasonable inference
         to be drawn from his testimony is that many of the 'facts' he was
20          relaying came from police reports or other testimonial statements,"
         thereafter specifying over the course of three pages particular
21          portions of the testimony. He then acknowledges Gardeley, supra, 14
         Cal.4th 605, which held that the basis for an expert's opinion is not
22          subject to the hearsay rule (on the theory that it is not admitted for
         the truth of any assertions), and People v. Hill (2011) 191 Cal.App.4th
23          1104, 1127-1131, which was critical of applying this holding in the
         context of the right of confrontation but concluded it was obligated
24          to do so under Auto Equity Sales, Inc. v. Superior Court (1962) 57
         Cal.2d 450, 455. He contends, however, that the concurring and
25          dissenting opinions in Williams v. Illinois (2012) 567 U.S. ___ [183
         L.Ed.2d 89] combine to create a holding contrary to Gardeley, which
26          this court should follow to reverse the judgment for the admission of
         this prejudicial hearsay in violation of his right to confrontation.

27           We disagree that this combination of concurring and dissenting
28          opinions has any effect as a holding allowing us to disregard a
         holding of the California Supreme Court. (People v. Whitfield (1996)

46 Cal.App.4th 947, 956-957 [federal high court's "clearly decided" premise must be followed over contrary state holding]; People v. Rooney (1985) 175 Cal.App.3d 634, 644 [must follow California Supreme Court if federal high court "has never squarely ruled on the issue"]; see Seminole Tribe of Florida v. Florida (1996) 517 U.S. 44, 67 [134 L.Ed.2d 252] [only the portions of a United States Supreme Court opinion necessary to the result constitute holding].)

However, [People v.] Sanchez [(2016) 63 Cal.4th 665] has recently refuted Gardeley and all cases that followed it. "[C]ase-specific statements related by [a] prosecution expert concerning [a] defendant's gang membership constitute[] inadmissible hearsay under California law," and erroneous admission of this evidence, if it constitutes testimonial hearsay, must be harmless beyond a reasonable doubt to uphold a conviction. (Sanchez, supra, 63 Cal.4th at pp. 670-671, 680, 684, 686 & fn. 13.) [footnote omitted.]

Given that we are reversing the substantive gang offense and striking the gang enhancements, the only way in which defendant can claim prejudice is if there is any reasonable doubt that admission of this evidence contributed to his other convictions. If we assume for the sake of argument that all of this evidence was testimonial, we do not entertain any such reasonable doubt.

Defendant admitted being present for the shootings, but attributed them to a mysterious third party. It is thus a question of whether this evidence made defendant any less credible. As noted above, he freely attested to his gang membership, and in his statement to the police, he noted even his fellow gang members were wary of his aggressive propensity for physical violence. Thus, evidence of gang participation and a violent nature were before the jury anyway. The present jury was, of course, instructed not to use gang evidence as proof of propensity, and the previous jury was obviously not inflamed by the same gang evidence into convicting him. The testimony defendant challenges in his brief [footnote omitted] is not particularly more egregious than the crimes of which he was accused, or being a self-admitted aggressor. We therefore are convinced beyond a reasonable doubt that the admission of this evidence did not affect the jury assessment of his credibility in rejecting his implausible defense.

Lodged Doc. 23 (ECF No. 13-23) at 12-14.

D.   Objective Reasonableness Under § 2254(d)

Because the state court found a confrontation violation but held it harmless, the harmless error finding is the subject of this court's review under § 2254(d).  See Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (per curiam); Fry v. Pliler, 551 U.S.112, 119 (2007).  This court must defer to the court of appeal's harmless error determination unless it was in conflict with the reasoning or the holdings of Supreme Court precedent, or if it applied harmless error review in an

9

1  objectively unreasonable manner.  Inthavong v. Lamarque, 420 F.3d 1055, 1058-59 (9th Cir.

2  2005), cert. denied, 547 U.S. 1059 (2006).

3        The state court applied the correct harmless error standard for a Confrontation Clause

4  violation: harmlessness beyond a reasonable doubt.  See Delaware v. Van Arsdall, 475 U.S. 673,

5  684 (1986).  The court's reasoning as to harmlessness was perfectly sound.  As the court noted,

6  the impact of testimonial hearsay about petitioner's gang involvement would have likely been

7  limited to the substantive gang charge and the gang enhancements—aspects of the verdict which

8  were vacated on appeal.  There is nothing objectively unreasonable about the court's conclusion

9  that the gang hearsay had no determinative effect on the jury's finding that petitioner was the

10  shooter.  The jury heard eyewitness testimony that the shooter was wearing a blue and white shirt;

11  other witnesses testified that petitioner was wearing a blue and white shirt; petitioner's blue and

12  white shirt tested positive for gunshot residue; and a witness testified that petitioner, before taking

13  off his blue and white shirt, had admitted shooting someone.  Given this evidentiary record, it is

14  not reasonable to suspect that the expert's hearsay testimony materially influenced the jury's

15  determination that petitioner was the shooter.

16        Moreover, the state court reasonably noted that to the extent if any that the jury's

17  credibility determination was influenced by knowledge of petitioner's gang affiliation, petitioner

18  himself had testified to his gang involvement and reputation for violence.  The jury had ample

19  grounds, entirely apart from the gang hearsay, for rejecting petitioner's testimonial credibility.

20  His denial was inconsistent with the other evidence, and his story was implausible.

21        For these reasons, the Court of Appeal's conclusion of harmlessness beyond a reasonable

22  doubt cannot be considered objectively unreasonable.  Accordingly, relief is unavailable under §

23  2254(d).  See Inthavong, 420 F.3d at 1058-59.

24  II.     Claim Two: Prosecutorial Misconduct and Ineffective Assistance of Counsel

25             A.  Petitioner's Allegations and Pertinent State Court Record

26        Petitioner presents five record-based instances of alleged prosecutorial misconduct.  First,

27  he claims the prosecutor violated his due process rights by arguing that because the individual

28  petitioner had identified as the supplier did not testify, the jury should conclude he did not exist.

This argument was improper because the witness at issue had testified for the prosecution at the first trial, and failed to respond to a defense subpoena at the retrial.  ECF No. 1 at 29-30.  Second, the prosecutor improperly suggested that his office would not prosecute an innocent man, stating "We don't arrest victims."  Id. at 30.  Third, the prosecutor misstated evidence regarding shoe prints at the scene, and stated without evidentiary support that the state would have followed up on evidence of third part culpability.  Id.  Fourth, the prosecutor urged jurors to draw a propensity inference from evidence of petitioner's gang affiliation, arguing that that the jury should find he committed the crimes because "that's what gangsters do."  Id.  Fifth, the prosecutor was improperly argumentative in cross-examining petitioner.  Specifically, the prosecutor falsely insinuated that petitioner had been convicted of assault with a deadly weapon; questioned him about highly prejudicial gang offenses committed by other people; insinuated without a good faith basis that a prior shooting committed by petitioner, which did not result in charge, was not self-defense; suggested that in his own experience gangsters do not admit to committing crimes; and insinuating without a good faith basis that petitioner was an "Original Gangster."  Id. at 30-31.

Petitioner also alleges that trial counsel was prejudicially ineffective in several ways related to the gang evidence.  First, counsel failed to lodge appropriate objections to the gang expert's "basis" testimony.  Second, he failed to seek an instruction limiting the expert basis evidence to its proper purpose.  Third, he failed to object to improper and inflammatory gang expert opinion testimony.  Fourth, he failed to object to unsupported expert testimony about petitioner's active gang participation.  Fifth, he failed to object to references to the Mexican Mafia.  Id. at 31.

B.  The Clearly Established Federal Law

1.  Prosecutorial Misconduct

Improper prosecutorial comments violate the constitutional rights of a criminal defendant only where they "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations omitted).  "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v. Miller, 483

11

U.S. 756, 765 (1987).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial

misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips,

455 U.S. 209, 219 (1982).  "[I]t is not enough that the prosecutor's remarks were undesirable or

even universally condemned."  Darden, 477 U.S. at 181.

2.  Ineffective Assistance of Counsel

To establish a constitutional violation based on ineffective assistance of counsel, a

petitioner must show (1) that counsel's representation fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

C.  The State Court's Ruling

This claim was presented on direct appeal.  Because the California Supreme Court denied

discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

decision on the merits and is the subject of habeas review in this court.  See Ortiz, 704 F.3d at

1034.

The Court of Appeal ruled that the prosecutorial misconduct claims were forfeited:

> Over the course of five pages, defendant identifies what he calls
> instances of the prosecutor's argumentative cross-examination of
> him. He also contends that in closing arguments, the prosecutor (1)
> impermissibly asserted that if the supplier existed, the defense would
> have subpoenaed him, that it was his personal decision to prosecute
> defendant, and that his office did not prosecute victims; (2) misstated
> evidence, and referenced extrajudicial evidence regarding police
> protocols; and (3) urged jurors to use gang evidence for purposes of
> propensity. He admits that "[e]xcept for trial counsel's objection to
> the prosecutor asking [him] whether a [member of his gang]
> committing torture would thereby gain respect, trial counsel failed to
> object to the prosecutor's [questioning and argument]." [Footnote
> omitted.] However, in cursory fashion, he asks us to exercise our
> discretion to address forfeited contentions, suggests the relentless
> nature of the misconduct forced trial counsel to accede without

12

1   objection, and baldly asserts "there [does not] appear to be [any]
    viable reason for defense counsel" not to object (without giving any
2   further analysis of this assertion).

3   Failure to lodge a contemporaneous objection and a request for an
    admonition forfeits any claim of prosecutorial misconduct, except
4   where a defendant affirmatively establishes on appeal that it was
    irremediable or it was futile to object, with more than a "ritual[ized]
5   incantation" to this effect. (People v. Panah (2005) 35 Cal.4th 395,
    462.) Defendant has not established futility on the present record.
6   People v. Jones (1997) 15 Cal.4th 119, 181 observed that objecting
    at the outset could cut off any subsequent misconduct, and therefore
7   having numerous instances of unchallenged purported misconduct is
    not a basis for excusing forfeiture. People v. Pitts (1990) 223
8   Cal.App.3d 606, 692 is inapposite: "[E]arly on in trial, it became
    abundantly clear that any objections by defense counsel on the
9   grounds of prosecutorial misconduct would be overruled and
    requests for admonitions denied or ignored." Defendant has failed to
10  identify similar circumstances in his trial. Defendant also fails to
    particularize the manner in which the prosecutor's conduct could not
11  have been the subject of an effective admonition.

12  Defendant's attempt to reach the issue under the guise of ineffective
    assistance of trial counsel fails in two regards. In the first place, direct
13  appeal is almost inevitably the inappropriate forum for establishing
    that the inherently tactical choice of failing to raise an objection to
14  misconduct fell below reasonable professional standards. (People v.
    Lopez (2008) 42 Cal.4th 960, 966, 972.) In the second place,
15  defendant does not provide anything more than a perfunctory
    analysis of how the failure to object in each instance did not meet
16  objective professional standards; "[t]his will not suffice" (People v.
    Mitchell (2008) 164 Cal.App.4th 442, 466-467 [rejecting claim of
17  ineffective assistance on this basis]). This is particularly true where
    trial counsel was in a position to observe the manner in which this
18  trial unfolded in comparison with the first trial, and calculate whether
    any of the instances defendant identifies on appeal were of any
19  moment. As a result, we will not countenance this exercise in
    frivolous second-guessing of trial counsel. If in fact trial counsel did
20  not have any strategic basis for allowing the prosecutor's actions,
    defendant has a remedy in habeas corpus, if he can establish resulting
21  prejudice.

22  Finally, although we have discretion to consider an issue regardless
    of forfeiture, this applies where it raises a question of law on such
23  undisputed facts as appear in the record on appeal. (Bialo v. Western
    Mutual Ins. Co. (2002) 95 Cal.App.4th 68, 73; 9 Witkin, Cal.
24  Procedure (5th ed. 2008) Appeal, § 415, pp. 473-474.) However, this
    is a disfavored course of action; it is unjust to the opposing party,
25  unfair to the trial court, and contrary to judicial economy (i.e., a waste
    of the time of the parties and the judicial branch) since it encourages
26  the embedding of reversible error through silence in the trial court.
    (Saville v. Sierra College (2005) 133 Cal.App.4th 857, 873.) As a
27  result, we ordinarily exercise our discretion to excuse forfeiture
    "rarely and only in cases presenting an important legal issue." (In re
28  S.B. (2004) 32 Cal.4th 1287, 1293.) The circumstances of the present

13

1    case hardly satisfy this stringent criterion. As a result, the claim of
     prosecutorial misconduct is not cognizable in this appeal.
2

3    ECF No. 13-23 at 14-16.

4         The appellate court denied the ineffective assistance of counsel claims on the merits:

5         In general, defendant faults trial counsel for not filing any "motions
          in limine seeking exclusion or limitation of the gang affiliation
6         evidence." In particular, he (1) asserts defense counsel should have
          objected to much of the expert's testimony as "violat[ing] the basic
7         limitations on expert witness testimony"; (2) reiterates his earlier
          argument that the "extensive testimonial [hearsay] materials"
8         conveyed to the jury that defense counsel approved of such
          statements (recast in the guise of allowing "highly prejudicial"
9         hearsay evidence); and (3) contends trial counsel allowed the expert
          to "paint all . . . gang members as uniformly violent sociopaths," give
10        other opinions about gangs lacking any factual basis that the trial
          court would have excluded, and give unsupported testimony about
11        defendant's gang participation. Finally, he asserts trial counsel
          should have prevented any references to the prison gang from which
12        defendant's gang derives.

13        For the reasons we have just expressed above, we may plausibly posit
          on direct appeal that a reasonable defense attorney who had obtained
14        a hung jury despite similar evidence in the previous trial (defendant
          not having articulated any distinction between the scope of the gang
15        evidence in the two trials) would not have felt compelled to make an
          objection in the second trial. Defendant's claim of ineffective
16        assistance thus fails.

17   ECF No. 13-23 at 16-17.

18        D.   Procedural Default

19        Respondent urges the court to find petitioner's prosecutorial misconduct claims

20   procedurally defaulted. ECF No. 12 at 24-25. As a general rule, a federal habeas court will not

21   review a question of federal law decided by a state court if the decision of that court rests on a

22   state law ground that is independent of the federal question and adequate to support the judgment.

23   Coleman v. Thompson, 501 U.S. 722, 729 (1991). This includes state court application of state

24   law procedural bars. Id. The Ninth Circuit has recognized that California's contemporaneous

25   objection rule is an independent and adequate state law ground for rejecting a claim, and therefore

26   supports default in federal court. See Zapata v. Vasquez, 788 F.3d 1106, 1111-12 (9th Cir. 2015);

27   Fairbank v. Ayers, 650 F.3d 1243, 1256-57 (9th Cir. 2011). Pursuant to these authorities, the

28   ////

                                        14

1  undersigned concludes that the state Court of Appeal's forfeiture ruling support a finding of

2  default.

3          Default can be excused on a showing of cause and prejudice, however, and ineffective

4  assistance of counsel is a cognizable "cause."  See Edwards v. Carpenter, 529 U.S. 446, 451

5  (2000).  To excuse a default, ineffective assistance of counsel must be independently pleaded,

6  exhausted, and proved.  Id.; Murray v. Carrier, 477 U.S. 478, 488-489 (1986).  Here, petitioner's

7  independently pleaded ineffective assistance of counsel claims do not rest on the failure of trial

8  counsel to object to the alleged instances of prosecutorial misconduct.  See ECF No. 1 at 31.

9  Accordingly, his invocation of ineffective assistance to excuse default (see ECF No. 16 at 9-11) is

10  unavailing.[2]

11              E.  Objective Reasonableness Under § 2254(d)

12          Because petitioner's distinct ineffective assistance of counsel claim was denied on the

13  merits, it is reviewed here for objective reasonableness.[3]  Although the state appellate court's

14  discussion of the claim was cursory, it cannot be considered an objectively unreasonable

15  application of Strickland.  And even if the decision could be considered unreasonable for some

16  reason, the claim would still be subject to review in this court under pre-AEDPA standards.  See

17  Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (when § 2254(d) is satisfied, the federal habeas

18  court resolves the claim "without the deference AEDPA otherwise requires"); Frantz v. Hazey,

19  533 F.3d at 737 (when § 2254(d) (1) is satisfied, the federal habeas court conducts de novo

20  review of constitutional claim).  Under any standard of review, petitioner's ineffective assistance

21  claim fails for lack of prejudice.

22

23  [2]  Petitioner did argue in the California Court of Appeal that ineffective assistance should excuse
    his forfeiture.  Even if this argument constituted the presentation of an independent "claim,"
24  however, the issue was not included in the petition for review, ECF No. 13-27, and therefore was
    not exhausted.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (a petitioner satisfies the
25  exhaustion requirement by fairly presenting his claims to the highest state court before presenting
    them to the federal court).  An unexhausted ineffective assistance claim cannot excuse a default.
26  Murray v. Carrier, 477 U.S. at 488-489.
27  [3]  This claim appears to be unexhausted, as it was not included in the petition for review filed in
    the California Supreme Court.  See ECF No. 13-27.  An unexhausted claim may, however, be
28  denied on the merits.  § 2254(b)(2).

1    Even if trial counsel performed deficiently in failing to object to the various items of

2    gang-related evidence that petitioner identifies, the jury's exposure to that information would

3    have had prejudicial effect—if any at all—on the substantive gang offense and the gang

4    enhancements.  These were vacated on appeal.  There is no reasonable probability that the

5    evidence would have affected the jury's determination that petitioner was the shooter.  In any

6    event, the jury was instructed not to use gang evidence as proof of propensity and jurors are

7    presumed to follow the instructions given to them by the court.  <u>Penry v. Johnson</u>, 532 U.S. 782,

8    799 (2001) (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987)).  Moreover, as noted in the

9    state court's harmless error analysis in Claim One, petitioner had admitted his gang membership

10   and reputation for physical aggression.  The testimony at issue on this claim was merely

11   cumulative on those points.  And for the same reasons that the confrontation error in permitting

12   the gang expert's "basis" testimony was harmless beyond a reasonable doubt, counsel's failure to

13   preclude that testimony or obtain a pinpoint instruction cannot have been prejudicial.

14   For these reasons, this portion of Claim Two fails on the merits.

15   CONCLUSION

16   For all the reasons explained above, the state courts' denial of petitioner's claims was not

17   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

18   AEDPA standards, petitioner has not established any violation of his constitutional rights.

19   Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

20   denied.

21   These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

26   he shall also address whether a certificate of appealability should issue and, if so, why and as to

27   which issues.  <u>See</u> 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

28   within fourteen days after service of the objections.  The parties are advised that failure to file

16

1    objections within the specified time may waive the right to appeal the District Court's order.

2    <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: January 4, 2024

4

5    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28